Andranik Tsarukyan (SBN 258241)
andy@remedylawgroup.com
Armen Zenjiryan (SBN 261073)
armen@remedylawgroup.com
REMEDY LAW GROUP LLP
610 E. Providencia Ave., Unit B
Burbank, CA 91501
Tel: (818) 422-5941

Attorneys for Plaintiff
SILVIA VALDIVIA DE CABRERA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIA VALDIVIA DE CABRERA, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SWIFT BEEF COMPANY, a Delaware corporation; JBS USA, LLC, an unknown limited liability company; JBS USA HOLDINGS, INC., an unknown corporation; JBS USA, an unknown entity; JBS USA INC., an unknown corporation; SWIFT & COMPANY INC., an unknown corporation; PILGRIM'S PRIDE CORPORATION, an unknown corporation; JBS USA FOOD COMPANY, an unknown entity; JBS USA FOOD COMPANY HOLDINGS, an unknown entity; and DOES 1 through 100, inclusive<br><br>Defendants. | Case No. 5:18-cv-02551-PSG-E<br><br>CLASS ACTION<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       June 29, 2020<br>Time:       1:30 p.m.<br>Courtroom: 6A<br>Judge:      Hon. Philip S. Gutierrez |

TO THE COURT, TO ALL PARTIES, AND THEIR COUNSEL OF RECORD

Please take notice that on June 29, 2020, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the United States First Street Courthouse, 350 W. First Street, Courtroom 6A, Los Angeles, CA 90012, Plaintiff Silvia Valdivia De Cabrera ("Plaintiff") will and hereby does move the Court for an order granting preliminary approval of the JOINT STIPULATION OF SETTLEMENT AGREEMENT AND RELEASE ("Agreement" or "Stipulation" herein) reached with Defendants Swift Beef Company and JBS USA Food Company Holdings ("Defendants"), a true and correct copy of which is attached as Exhibit 1 to the Declaration of Andranik Tsarukyan submitted herewith. Specifically, Plaintiff moves for an order to:

1.      grant preliminary approval of the terms of the Agreement as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, including the amount of the settlement; the amount of distributions to class members; the procedure for giving notice to class members; the procedure for opting out of the settlement; and the amounts allocated to the enhancement payments and attorney's fees and costs;

2.      preliminarily certify for settlement purposes the Settlement Class described in the Agreement as follows: all current and former non-exempt employees employed by Swift Beef Company and JBS USA Food Company Holdings in the State of California at any time from November 2, 2014 to the date the Court grants Preliminary Approval of the Agreement.

3.      Appoint Silvia Valdivia De Cabrera and Eddie Duron as the representatives for the Settlement Class;

4.      appointing Remedy Law Group LLP and Setareh Law Group as Class Counsel;

5.      approve the use of Phoenix Settlement Administrators as the settlement administrator;

6.      direct that notice issue to members of the Settlement Class as provided in the Agreement; and,

7.    schedule a final approval and fairness hearing on a date approximately 145 days after preliminary approval to consider whether the Agreement should be finally approved as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure.

Because Court approval of a proposed class action and PAGA action settlement is required, this Motion could not be resolved via a pre-filing conference of counsel. Nevertheless, the Parties have conferred several times regarding the content of this Motion, which constitutes the best compliance possible with Local Rule 7-3.

Plaintiff's motion is based on this Notice, the following Memorandum of Points and Authorities, the Declaration of Andranik Tsarukyan submitted herewith, all other pleadings and papers on file in this action and the related action entitled *Eddie Duron v. JBS USA Food Company Holdings, et al.*, 5:19- cv-00702 PSG(Ex) (C. D. Cal. 2019), and any oral argument or other matter that may be considered by the Court.

Respectfully submitted,

Dated:  May 6, 2020                **REMEDY LAW GROUP LLP**

By: */s/ Andranik Tsarukyan*
Andranik Tsarukyan
Armen Zenjiryan

Attorneys for Plaintiff
SILVIA VALDIVIA DE CABRERA

1

## TABLE OF CONTENTS

2

I.    INTRODUCTION.................................................................................1

3

II.    BACKGROUND.................................................................................1

4

    A.    The Filing of the Action .............................................................1

5

    B.    Discovery, Settlement Negotiations, and Settlement..................2

6

III.    SUMMARY OF SETTLEMENT TERMS.........................................3

7

IV.    CLASS DEFINITION ........................................................................6

8

V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL .........6

9

    A.    Plaintiff's Claims Merit Class Action Treatment.......................7

10

        1.    Numerosity .........................................................................8

11

        2.    Commonality and Predominance of Common Issues .........8

12

        3.    Typicality..........................................................................10

13

        4.    Adequate Representation ..................................................11

14

        5.    Superiority ........................................................................11

15

    B.    At This Stage, Plaintiff Need Only Establish That the Settlement Falls

16

        Within the Range of Reasonableness.......................................13

17

        1.    The Value of the Settlement to Class Members Is Fair, Reasonable

18

            and Adequate ...................................................................14

19

        2.    The PAGA Allocation ......................................................18

20

        3.    The Agreed Upon Fees and Costs Are Reasonable..........21

21

            a)    Plaintiff seeks reasonable fees..................................21

22

            b)    A lodestar crosscheck will support the requested fee..............21

23

        6.    The Enhancement Award Is Reasonable..........................22

24

        7.    The Class Notice...............................................................23

25

VI.    THE COURT SHOULD SCHEDULE A FAIRNESS HEARING.................... 24

26

VII.    CONCLUSION .............................................................................. 255

27

28

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

*Acosta v. Trans Union LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007)...................................................................7

*Amchem Products Inc. v. Woodward* (1997)
    521 U.S. 591 ...............................................................................................11

*Armstrong v. Board of School Directors of the City of Milwaukee*,
    616 F.2d 305 (6th Cir. 1980) .....................................................................7

*Baldwin & Flynn v. Nat'l. Safety Associates*,
    149 F.R.D. 598 (N.D. Cal. 1993) .............................................................8

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ..........................................................8, 9, 10

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
    917 F.2d 1171 (9th Cir. 1990) ................................................................10

*Chu v. Wells Fargo Invst., LLC*,
    No. C 05–4526 MHP (N.D. Cal Feb. 16, 2011), 2011 WL 672645 .....................20

*In re Computer Memories Sec. Litig.*,
    111 F.R.D. 675 (N.D. Cal. 1986) .............................................................8

*Cotter v. Lyft, Inc.*,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016).................................................19

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ............................................................9, 12

*Dearaujo v. Regis Corp.*,
    No. 2:14-cv-01408-KJM-AC (E.D. Cal. June 29, 2016), 2016 WL 3549473 ...............................................................................................20

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..................................................................................8

*Elkins v. Equitable Life Ins. Of Iowa*,
    1998 WL 133747 (M.D. Fla. 1998)........................................................12

*Fleming v. Covidien*,
2011 WL 7563047 (C.D. Cal. 2011) ...................................................................19

*Garcia v. Gordon Trucking, Inc.*,
No. 1:10–CV–0324 AWI SKO (E.D. Cal. Oct. 31, 2012), 2012 WL
5364575 .............................................................................................................20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ......................................................7, 9, 10, 11

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ...........................................................................10

*In re Immune Response Securities Litigation*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...........................................................14

*Ingram v. The Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) ......................................................................22

*Lewis v. Gross*,
663 F. Supp. 1164 (E.D.N.Y. 1986) ...................................................................8

*Linney v. Cellular Alaska Partnership*,
1997 WL 450064 (N.D. Cal. 1997) .............................................................13, 14

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*,
834 F.2d 677 (7th Cir. 1987) ............................................................................13

*Mendoza v. United States*,
623 F.2d 1338 (9th Cir. 1980) ..........................................................................24

*In re Mercury Interactive*,
816 F.3d 988 (9th Cir. 2010) ............................................................................22

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................24

*Miller v. CEVA Logistics U.S.A., Inc.*,
2015 WL 729638 (E.D. Cal. Feb. 19, 2015) ....................................................18

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950).........................................................................................23

*O'Connor v. Uber Technologies, Inc.*,
    201 F.Supp.3d 1110 (N.D. Cal. 2016)...............................................................19

*Officers for Justice v. Civil Service Commission of City and County of
    San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................13

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ........................................................................21

*Pridd v. Edelman*,
    883 F.2d 438 (6th Circuit 1989) ...................................................................13

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986) .......................................................................8

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2000) ........................................................................18

*Silber v. Mabo*,
    18 F.3d 1449 (9th Cir. 1994). Notice ...........................................................23

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ......................................................................21

*In re Southern Ohio Correctional Facility*,
    175 F.R.D. 270 (S.D. Ohio 1997)..................................................................22

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ....................................................................7, 13

*Strube v. American Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005) .................................................................12

*Valentino v. Carter-Wallace*,
    97 F.3d 1227 (9th Cir. 1996) ........................................................................12

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ..........................................................................6

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995).................................................................22

*Viceral v. Mistras Group*,
  2016 WL 5907869 (N.D. Cal. 2016) ...................................................................... 19

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ..................................................................... 21, 22

*Wang v. Chinese Daily News*,
  231 F.R.D. 602 (C.D. Cal. 2005) ................................................................... 8, 10

*Willis v. Xerox Bus. Servs.*,
  LLC, 2013 WL 6053831 (E.D. Cal. 2013) ............................................................ 18

*Zinser v. Accufix Research Institute, Inc.*,
  253 F.3d 1188 (9th Cir. 2001) ...................................................................... 9

**California Cases**

*Amaral v. Cintas Corp.*,
  163 Cal. App. 4th 1157 (2008) ..................................................................... 18

*Carrington v. Starbucks Corp.*,
  30 Cal. App. 5th 504 (2018) ................................................................... 19, 20

*Duran v. US Bank Nat'l Ass'n*,
  59 Cal. 4th 1 (2014) ............................................................................ 14, 15

*Naranjo et al. v. Spectrum Security Services, Inc.*,
  40 Cal.App. 5th 444 (2019) ......................................................................... 15

**Other State Cases**

*Cabrera v. Advantage Sale & Marketing, LLC*,
  Case No. BC485259, 2013 WL 1182822 (Super. Ct. L.A. County,
  March 12, 2013) .................................................................................. 19

*Chavez v. Vallarta Food Enterprises, Inc.*,
  No. BC490630 (Super. Ct. L.A. County, Nov. 10, 2014; Judge
  William F. Highberger) ........................................................................... 20

*Coleman v. Estes Express Lines, Inc.*,
  No. BC429042 (Super. Ct. L.A. County, Oct. 3, 2013; Judge
  Kenneth R. Freeman) ............................................................................. 20

*Guerrero v. R.R. Donnelley & Sons Co.*,
   Case No. RIC 10005196 (Super. Ct. Riverside County, July 16,
   2013; Judge Matthew C. Perantoni) ....................................................... 20

*Parra v. Aero Port Services, Inc.*,
   No. BC483451 (Super. Ct. L.A. County, April 20, 2015; Judge Jane
   Johnson) .................................................................................................... 20

*Penaloza v. PPG Industries Inc.*,
   Case No. BC471369, 2013 WL 2917624 (Super. Ct. L.A. County,
   May 20, 2013)........................................................................................... 19

*Thompson v. Smart & Final, Inc.*,
   No. BC497198 (Super. Ct. L.A. County, 18, 2014; Judge William F.
   Highberger)............................................................................................... 20

**California Statutes**

Business & Professions Code
   §§ 17200, *et seq.* ......................................................................... 1, 9, 10

Cal. Code Regs.
   § 13520 ..................................................................................................... 15

Labor Code
   § 203 ............................................................................................. 9, 10, 15
   §§ 203 and 226............................................................................................ 15
   §§ 203 and 226(e) ...................................................................................... 15
   § 226 ............................................................................................. 9, 10, 15
   § 226.7 ....................................................................................................... 15
   § 2699(e)(2) ........................................................................................ 18, 21
   § 2699 et seq. .............................................................................................. 5

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................. 1, 7, 8

Rule 23(a)(1)......................................................................................... 8

Rule 23(a)(2)......................................................................................... 9

Rule 23(a)(3)....................................................................................... 10

Rule 23(a)(4)....................................................................................... 11

Rule 23(a) and Rule 23(b)(3) ...................................................................... 7, 8

Rule 23(b)(3) ........................................................................................ 9, 12, 23

Rule 23(b)(3)(A), (B) and (C) ...................................................................... 12

Rule 23(b)(3)(A)-(C) .................................................................................... 11

Rule 23(b)(3)(D) ........................................................................................... 11

Rule 23(c)(2)(B) ...................................................................................... 23, 24

Rule 23(c)(3) ................................................................................................. 24

Rule 23(e) .......................................................................................... 7, 13, 14

Rule 23(e)(C)(1) .............................................................................................. 7

Rule 23(e)(C)(4) .............................................................................................. 7

Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro.
    Before Trial § 10:573 (The Rutter Group 2006) ..................................... 7

1    **I.      INTRODUCTION**

2           This is a putative wage and hour class action on behalf of all current and former non-

3    exempt employees employed by Defendants Swift Beef Company and JBS USA Food

4    Company Holdings in California during the Class Period (November 2, 2014 through the

5    date of preliminary approval of this Settlement by the Court). The core issues in the case

6    were based on allegations by Plaintiff that Defendants improperly rounded time worked and

7    failed to provide compliant meal breaks. Defendants dispute these claims, deny liability,

8    and have vigorously defended the action to date.

9           After discovery, the exchange of additional informal data, and arms-length

10   negotiations, Plaintiff and Defendants (Plaintiff and Defendants collectively referred to

11   herein as the "Parties") reached a proposed class action settlement with a gross value of

12   about $659.05 per Class Members for approximately 1,138 putative Settlement Class

13   Members (the Class Settlement Amount is $750,000).

14          The Parties believe the Settlement to be fair and reasonable, to adequately reflect the

15   potential liability, and to be the result of thorough factual and legal analyses and arms-length

16   negotiations. Through this Motion, Plaintiff requests certification of a Settlement Class

17   pursuant to Fed. R. Civ. P. 23 and preliminary approval of the proposed class action

18   settlement.

19   **II.     BACKGROUND**

20          **A.      The Filing of the Action**

21          On November 2, 2018, Plaintiff filed a lawsuit in California state court on behalf of

22   all non-exempt, hourly paid employees of Defendants in California. On February 5, 2019,

23   Plaintiff filed a First Amended Complaint asserting claims for: (i) unpaid minimum wages;

24   (ii) unpaid overtime wages; (iii) meal and rest break violations; (iv) failure to timely pay

25   wages upon termination; (v) wage statement violations; (vi) derivative claims under

26   Business & Professions Code §§ 17200, *et seq*.; and (vii) penalties under the Private

27   Attorneys General Act. Defendants removed the case to this Court on December 5, 2018.

28

(Declaration of Andranik Tsarukyan ["Tsarukyan Decl."], at ¶ 4.)

On March 13, 2019, plaintiff Eddie Duron also filed a lawsuit in California state court on behalf of all non-exempt, hourly paid employees of Defendants in California. Defendants removed the *Duron* case, entitled *Eddie Duron v. JBS USA Food Company Holdings, et al.*, 5:19- cv-00702 PSG(Ex) (C. D. Cal. 2019), to this Court and, on April 23, 2019, filed a notice of related cases relating the instant case with the *Duron* case. (Tsarukyan Decl., at ¶ 5.) The instant case and the *Duron* case have six causes of action in common with each other and involve substantially similar purported putative classes of individuals. Therefore, approval of the Settlement in the instant case will also resolve the wage and hour claims in the *Duron* case.[1] (*Id.*)

**B.    Discovery, Settlement Negotiations, and Settlement**

The Parties have conducted investigation of the facts and law during the prosecution of this litigation. (Tsarukyan Decl., at ¶ 7.) Such investigation has included interviews of witnesses, production and review of class-wide data; and, numerous communications between the Parties to identify and assess the issues. (*Id.*) The Parties have further investigated the applicable law as applied to the facts discovered regarding the alleged claims of Plaintiff and potential defenses thereto, and the damages claimed by Plaintiff. (*Id.*)

The Parties engaged in vigorous arm's length negotiations and subsequently signed a long form settlement agreement (the Agreement). (Tsarukyan Decl., at ¶ 8.) The Settlement was reached after evaluating the Parties' theories of potential exposure for the underlying claims, as well as Plaintiff's claims for interest and penalties. The Parties also assessed appropriate discounts to the potential liability based on Defendants' contentions and defenses. (*Id.*) Plaintiff and Class Counsel are aware of the burdens of proof necessary

---

[1] The Settlement Agreement designates Eddie Duron as a class representative and seeks an enhancement payment of up to $7,500 for his time and efforts. Counsel for plaintiff Silvia Valdivia De Cabrera have entered into a written fee sharing agreement with counsel for Eddie Duron in which Setareh Law Group will receive 32.5% of the total fee awarded and Remedy Law Group LLP will receive 67.5% of the fee awarded. Both Plaintiff Silvia Valdivia De Cabrera and Eddie Duron have approved the agreement in writing. (Tsarukyan Decl., at ¶ 6.)

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

to establish liability for the claims in the Action, both generally and in response to Defendants' defenses thereto. (*Id*.)

Based on their own independent investigations and evaluations, Class Counsel are of the opinion that the Settlement for the consideration and terms set forth below, in view of the Class Representatives' and average Class Member's claims and the risk of loss, is fair, reasonable, and adequate in light of all known facts and circumstances, and is in the best interests of the Class. (Tsarukyan Decl., at ¶ 9.) Class Counsel are also of the opinion that the total consideration and payment set forth in this Agreement is adequate in light of the uncertainties surrounding the risk of further litigation and the defenses that Defendants has asserted and could assert. (*Id*.)

Solely for the purpose of settling this case, the Parties agree that the requirements for establishing class action certification with respect to this class have been met and are met. (Tsarukyan Decl., at ¶ 10.) If this Settlement is not approved by the Court for any reason, Defendants reserve the right to contest class certification. (*Id*.) This Settlement, if approved by the Court, will result in the termination with prejudice of the litigation through the entry of the Judgment and the release of all released claims for all Class Members, including all within the class definition who have not elected to exclude themselves from the Settlement Class. (*Id*.)

## III.   SUMMARY OF SETTLEMENT TERMS

The full terms of the settlement are set forth in the Agreement. The primary material terms are as follows:

         (a)   The Settlement Class is: all current and former non-exempt employees employed by Swift Beef Company and JBS USA Food Company Holdings in the State of California at any time from November 2, 2014 to the date the Court grants Preliminary Approval of the Settlement Agreement (Settlement, ¶ 4.)

1     (b)   Defendants stipulate to certification of a Settlement Class for purposes

2           of Settlement only (Settlement, ¶ III.2);

3     (c)   <u>Settlement Amount</u>:  Defendants will pay a maximum of $750,000.00,

4           referred to as the Gross Settlement Amount (or GSA herein)

5           (Settlement, ¶ 18);

6     (d)   <u>No Reversion</u>: The Settlement is a non-reversionary settlement

7           (Settlement, ¶ 18);

8     (e)   <u>No Claim Form Required</u>: No claim for is required for a Class Member

9           to receive the Class Member's settlement share.  (Settlement, ¶ 19);

10    (f)   <u>Release</u>:  The Settlement will release specified wage-and-hour claims

11          for those Settlement Class Members who do not opt out of the

12          Settlement;

13    (g)  <u>Net Settlement Amount Available to the Class</u>: After deducting Class

14          Counsels' proposed attorneys' fees and costs, enhancement payment to

15          Plaintiff and Eddie Duron, Administration costs, and the payment to the

16          LWDA, the remainder will be available for distribution to Settlement

17          Class Members who do not opt out, with each Settlement Class

18          Member receiving a share based on the number of workweeks each

19          Settlement Class Member worked for Defendants within the Settlement

20          Class Period.  The Net Settlement Amount is estimated to be $460,000,

21          and each of the approximately 1,138 Class Members will receive, on

22          average, up to $404, after all deductions but before any tax

23          withholdings (Settlement, ¶¶ 3, 10, 11, 18, 24);

24    (h)  <u>Tax Allocation</u>: The amounts distributed to Settlement Class Members

25          will be characterized as 20% alleged unpaid wages and 80% as alleged

26          unpaid penalties and interest (Settlement, ¶ III.6.d);

27

28

(i)  <u>Employer's Portion of Payroll Taxes Paid Separately</u>: Defendants' portion of payroll taxes (e.g., FICA, FUTA, etc.) owed on any settlement payments to Settlement Class Members that constitute wages will be paid separate and apart from the GSA (Settlement, ¶ 18);

(j)  <u>*Cy Pres*</u>:  Any settlement checks that are mailed to the Settlement Class Members and remain uncashed after 180 days of the date of issuance will be cancelled, and the moneys will be paid to the State Controller's Office Unclaimed Property division as unclaimed property (Settlement, ¶ III.9.j);

(k)  <u>Administration</u>:  The notice portion of the Settlement will be administered by a third-party Administrator, Phoenix Settlement Administrators, and costs of administration are estimated to be no more than $15,000 (Settlement, ¶ III.7.d);

(l)  <u>PAGA Allocation</u>: From the GSA, $5,625.00 will be paid to the California Labor & Workforce Development Agency to resolve and settle claims brought pursuant to the California Private Attorneys General Act, Labor Code § 2699 et seq. ("PAGA"), representing 75% of the $7,500.00 allocated to resolve claims arising under PAGA. (Settlement, ¶ III.7.f);

(m)  <u>Enhancement/Service Award to Plaintiff and Eddie Duron</u>: Defendants will not oppose the application for Class Representative Enhancement of up to $7,500.00 each for Plaintiff and Eddie Duron, to be paid from the GSA. (Settlement, ¶ 10);

(n)  <u>Fees and Costs</u>:  Defendants will not oppose Class Counsel's application for fees up to the amount of $249,999.99 (33.3% of the GSA), and actual costs, in an amount not to exceed $10,000.00, to be paid out of the GSA.  (Settlement, ¶ III.7.b).

(Tsarukyan Decl., ¶ 11-12.)  A true and correct copy of the JOINT STIPULATION OF
SETTLEMENT AGREEMENT AND RELEASE is attached thereto as Exhibit "1."

## IV.    CLASS DEFINITION

The Settlement Class is defined as follows:

> Aall current and former non-exempt employees employed by Swift Beef Company
> and JBS USA Food Company Holdings in the State of California at any time from
> November 2, 2014 to the date the Court grants Preliminary Approval of the
> Agreement (Settlement, ¶ 4.)

(Tsarukyan Decl., ¶ 11.a and Exhibit 1.)

## V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

The law favors settlement, particularly in class actions and other complex cases,
where substantial resources can be conserved by avoiding the time, cost, and the rigors of
formal litigation.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).
These concerns apply in a case such as this, where allegedly wrongful practices potentially
affected numerous employees, in relatively small amounts.

Any settlement of class litigation must be reviewed and approved by the court.  This
is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review
after notice has been distributed to the class for their comment or objections.  The *Manual
for Complex Litigation Second* states at § 30.44 (1985):

> A two-step process is followed when considering class settlements … if
> the proposed settlement appears to be the product of serious, informed,
> non-collusive negotiations, has no obvious deficiencies, does not
> improperly grant preferential treatment to class representatives or
> segments of the class, and falls within the range of possible approval, then
> the court should direct that notice be given to the class members of a
> formal fairness hearing, at which evidence may be presented in support of
> and in opposition to the settlement.

When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)]. "[T]he district court must assess whether a class exists," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003), *i.e.*, whether the lawsuit qualifies as a class action under Rule 23. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).

At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952; *see also* Rule 23(e)(C)(1), which provides that a court may finally approve a settlement of a class action if it finds after a hearing that the settlement is "fair, reasonable, and adequate" and Rule 23(e)(C)(4), which provides that any class member may object to a proposed settlement.

## A.  Plaintiff's Claims Merit Class Action Treatment

At the preliminary approval stage, a plaintiff need only make a "prima facie showing" of the requirements of Rule 23.[2]  In determining the propriety of class certification, a court may not delve into the underlying merits of the claims.  The fundamental question "is not

---

[2] *See*, Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10:573 (The Rutter Group 2006).

1    whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather
2    whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,
3    178 (1974).

4        The Ninth Circuit has established that, when ruling on the propriety of class
5    certification, a district court "is bound to take the substantive allegations of the complaint
6    as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). A court "may not
7    require plaintiffs to make a preliminary proof of their claim; it requires only sufficient
8    information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l. Safety Associates*,
9    149 F.R.D. 598, 600 (N.D. Cal. 1993). Under these standards, this action meets the
10   requirements for certification under Rule 23(a) and Rule 23(b)(3).

11                           **1.    Numerosity**

12       Under Rule 23(a)(1), a class action may be maintained where "the class is so
13   numerous that joinder of all members is impracticable." In determining whether joinder
14   would be impracticable, a court may consider not only the sheer number of class members,
15   *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (numbers alone may be
16   dispositive), but also "the nature of the action, the size of the individual claims, [and] the
17   inconvenience of trying individual suits." *Wang v. Chinese Daily News*, 231 F.R.D. 602,
18   606 (C.D. Cal. 2005). "A class action may proceed upon estimates as to the size of the
19   proposed class." *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986). *See also, In
20   re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified
21   where plaintiffs did not establish exact size, but demonstrated that class would "obviously
22   be sufficiently numerous").

23       In this action, the Class is composed of approximately 1,138 individuals (as of the
24   date data was complied in May 2019). (Tsarukyan Decl., ¶ 35.) It is sufficiently numerous
25   that the individual joinder of all members is impracticable.

26                           **2.    Commonality and Predominance of Common Issues**

27       Rule 23(a)(2) requires that there be "questions of law or fact common to the class."

28

This commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie,* 524 F.2d at 901 n.17.

In this litigation, all Class Members have shared a common interest in determining whether Defendants improperly rounding time worked, whether Defendants failed to provide proper meal periods and rest breaks for Class Members; whether Defendants violated the itemized wage statement provisions of Labor Code § 226 by not providing accurate information as to wages; whether Defendants are subject to waiting time penalties under Labor Code § 203; whether the Defendant's policies and practices violated California Business & Professions Code sections 17200 *et seq*; and whether Defendants are liable for penalties under PAGA.

Given the permissive standard that courts in the Ninth Circuit employ when determining commonality, certification of the Class for settlement purposes is appropriate as Rule 23(a)(2) is satisfied.

Once it is established that common issues of law or fact exist, for Rule 23(b)(3) purposes, the Court next examines whether those common issues predominate. The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc*., 253 F.3d 1188, 1189 (9th Cir. 2001). When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. It is well

settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification.  *See*, *Blackie*, 524 F.2d at 905; *Wang*, 231 F.R.D. at 613.

There are common issues that may predominate over individual issues in this litigation.  For example: (1) Whether policies and procedures resulted in legally deficient meal periods and rest breaks for Class Members; (2) Whether policies and procedures resulted in uncompensated time under the employer's control; (3) Whether, as a result of these issues, Defendants violated the itemized wage statement provisions of Labor Code § 226 by not providing accurate information as to wages; (4) Whether, as a result of these issues, Defendants violated the payment timing provisions of Labor Code § 203 by not timely paying all wages due to former employees; and (5) Whether the Defendants' policies and practices violated California Business & Professions Code §§ 17200 *et seq*.

### 3.    Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class."  This factor is also construed permissively.  *See Hanlon*, 150 F.3d at 1019-20.  Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical."  *Id*. at 1020.  In other words, named plaintiffs need not be "identically situated" with all other class members.  "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief."  *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The typicality requirement is satisfied where "the named Plaintiffs raise the same Labor Code violations as other putative class members."  *Id*.  Here, Plaintiff is raising the same claims as the putative class members.  (Tsarukyan Decl., ¶ 36.)

1

### 4.    Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Adequate representation turns on whether the named plaintiff and his counsel "have any conflicts of interest with other class members," and whether the named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class."  Adequacy may be established by the mere fact that counsel are experienced practitioners.  *Hanlon*, 150 F.3d at 1020.

There are no conflicts of interest between Plaintiff and Class Members, and Plaintiff has both shown and expressed a willingness to represent Class Members.  The similarity of the claims asserted and remedies sought by Class Members and Plaintiff do not suggest any divergent interests held by Plaintiff.  Defendants did not assert unique defenses against Plaintiff that it could not assert against any other Class Members.  Also, there are no conflicts with Plaintiff's counsel.

Plaintiff's counsel has substantial class action experience and can adequately represent the Class.  They have been appointed class counsel in many wage and hour class actions against major employers.  (Tsarukyan Decl., ¶¶ 21-25.)

### 5.    Superiority

In deciding whether to certify a class for settlement purposes, a court considers the following factors to determine whether a class action is superior: (a) class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[3]  Some courts have found that the third Rule 23(b)(3) factor is "conceptually irrelevant in the context of a settlement."  See *Strube v.*

---

[3] Rule 23(b)(3)(A)-(C). When a court reviews a class action settlement, it does *not* consider Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

1   *American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005).  "With the

2   settlement in hand, the desirability of concentrating the litigation in one forum is obvious."

3   *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998).

4            To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a

5   court compares a class action with alternative methods for adjudicating the parties' claims.

6   Lack of a viable alternative to a class action necessarily means that it satisfies the superiority

7   requirement.  *See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a

8   class action is a superior method for managing litigation if no realistic alternative exists").

9   "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities,

10  [the] superiority portion of Rule 23(b)(3) has been satisfied."  *Culinary/Bartender Trust*

11  *Fund*, 244 F.3d at 1163.  In *Culinary/ Bartender Trust Fund*, the Ninth Circuit held that the

12  "case involve[d] multiple claims for relatively small sums" and that the class action clearly

13  served as the only method that would "'permit the plaintiffs to pool claims which would be

14  uneconomical to litigate individually.'"  *Id*. at 1163.

15           The class action is superior here as it is on the only method that will allow Class

16  Members "to pool [their individual] claims which would be uneconomical to litigate

17  individually." *Id.*

18           The factors articulated in Rule 23(b)(3)(A), (B) and (C) also favor class certification.

19  It is difficult to believe that any Class Members have an interest in individually controlling

20  the prosecution of separate actions, given the relatively small sums involved for any one

21  Class Member.  Any Class Member who wants to pursue a separate action can opt out of

22  the Settlement.

23           Also, it is desirable to concentrate issues in one forum.  The Settlement allows all

24  individuals to resolve similar claims against Defendants through a process that does not

25  even require a claim form.

26  ///

27  ///

28

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

1

2

**B.**    **At This Stage, Plaintiff Need Only Establish That the Settlement Falls Within the Range of Reasonableness**

3

4

5

6

7

8

9

10

No single criterion determines whether a class action settlement meets the requirements of Rule 23(e).  The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *See, Staton*, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

11

12

13

14

15

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id*. at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.

16

17

18

19

20

21

22

23

As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. *Officers for Justice*, 688 F.2d at 625.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id*.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self interest." *Staton*, 327 F.3d at 961.

24

25

26

27

There is a presumption that the negotiations were conducted in good faith.  Newberg, §11.51; *Pridd v. Edelman*, 883 F.2d 438, 447 (6th Circuit 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  The fact that settlement results from arms-length negotiations following "relevant discovery"

28

1    creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*,

2    1997 WL 450064, *5 (N.D. Cal. 1997); *See In re Immune Response Securities Litigation*,

3    497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal

4    discovery gave the parties a clear view of the strength and weaknesses of their cases).

5        Here, the Parties reached a non-collusive settlement after months of negotiations.

6    Obtaining class certification and establishing liability posed significant hurdles for the class

7    that justified the settlement.   The Agreement falls well within the range of reasonable

8    outcomes and merits approval under Rule 23(e).  (Tsarukyan Decl., ¶¶ 17, 18(a-g).)

9            **1.    The Value of the Settlement to Class Members Is Fair, Reasonable**

10                **and Adequate**

11       The Parties reached a Settlement in good faith after negotiating at arm's length.

12    (Tsarukyan Decl., ¶ 7.)  Settlement occurred only after substantial informal discovery and

13    production and expert analysis of class-wide data.   The information exchanged was

14    sufficient to permit Plaintiff's counsel to adequately evaluate the settlement. And, notably,

15    approval of a class action settlement does not require that discovery be formal or exhaustive.

16    *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D.

17    Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of

18    the strength and weaknesses of their cases).   The fact that settlement results from arms

19    length negotiations following "relevant discovery" creates "a presumption that the

20    agreement is fair."  *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D.

21    Cal. 1997).

22        With respect to the claims asserted on behalf of the Settlement Class in this case,

23    there are significant risks that support the reduced compromise amount. These risks include,

24    but are not limited to: (i) the risk that Plaintiff would be unable to establish liability for

25    allegedly unpaid straight time or overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59

26    Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*"), *citing Dilts v. Penske Logistics, LLC*  2014 WL

27    205039 (S.D. Cal. 2014) (dismissing certified off-the-clock claims based on proof at trial);

28

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT
AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

(ii) the risk that Defendants' challenged employment policies might not ultimately support class certification or a class-wide liability finding, *see*, *Duran*, 59 Cal. 4th at 14 & fn. 28 *(*citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition); (iii) the risk that uncertainties pertaining to the ultimate legality of Defendants' policies and practices could preclude class-wide awards of statutory penalties under Labor Code §§ 203 and 226(e); (iv) the risk that individual differences between Settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal. 4th at 19; (v) the risk that class treatment could be deemed improper as to one or more claims except for settlement purposes; (vi) and the risk that lengthy appellate litigation could ensue.

Moreover, the operative complaint also seeks derivative penalties pursuant to Labor Code sections 203 and 226 for unpaid meal period premiums.  However, the Court in *Naranjo et al. v. Spectrum Security Services, Inc.*, 40 Cal.App. 5th 444 (2019)[4] ruled that actions to recover unpaid meal period premiums under Labor code section 226.7 do not entitle employees to derivative penalties under Labor Code sections 203 or 226.  Plaintiff also might not prevail in showing that Defendants acted with the requisite intent necessary for the alleged claims for penalties under Labor Code sections 203 and 226.  Specifically, section 203 requires that a plaintiff show the employer committed a "willful" violation of the law in withholding wages. "A good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."  8 Cal. Code Regs. § 13520.  Similarly, penalties pursuant to section 226 require a "knowing and intentional" violation.  Defendants contend that they would present several good faith defenses that would preclude a finding of willfulness under section 203.

Defendants strongly deny any liability and the propriety of class certification for any reason other than settlement.  (Tsarukyan Decl., ¶ II.7.)  Continued litigation of this lawsuit

---

[4] On October 10, 2019, the California Supreme Court granted review of the case.

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

presented Plaintiff and Defendants with substantial legal risks that were (and continue to be) very difficult to assess.

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the Settlement Class Members. (Tsarukyan Decl. ¶¶ 13-19.) The settlement amount is, of course, a compromise figure. (Tsarukyan Decl. ¶ 17.) By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendants. (*Id*.) Moreover, each Settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims. (*Id*.) For the approximately 1,138 members of the Class, the average gross recovery before deductions for taxes, fees, and other costs, is approximately $659.05 per class member. (Tsarukyan Decl., ¶ 17.) The value of this amount reflects a fair compromise well within the range of reasonableness. Given the strong case that Defendants could bring to bear to challenge certification and liability, this is not an inconsequential sum. And, confirming the fundamental fairness of the settlement, each Class Member will be compensated ratably based on the number of workweeks they worked during the class period. (*Id*.)

The Gross Settlement Amount is fully consistent with any risk at this stage in the litigation. While Plaintiff would certainly have preferred to recover even more (and Defendants would have preferred to pay far less or zero), this outcome is in line with a carefully constructed estimate of the current fair value of the case. (Tsarukyan Decl., ¶ 18.) On that basis, it would be unwise to pass up this settlement opportunity. Again, the settlement amount falls *within* the statutory damages range, not below it. (*Id*.)

After analyzing the claims in this matter, Plaintiff has concluded that the value of this Settlement is fair, adequate and reasonable. For example, a reasonably estimated exposure for unpaid wages due to rounding of time was calculated, with the assistance of an expert, to be approximately $2,986. The reasonably estimated exposure for meal break violations

over the class period was calculated at $740,804.   However, with the risk factor discounts for certification and liability, the value of that claim is estimated to be approximately $88,896.48, assuming certification probability of 30% and merits success at 40%. Performing risk-adjusted valuations for all claims yields a total value in the range of roughly $665,000, compared to an unreduced estimated exposure of approximately $8,188,125.[5] (Tsarukyan Decl., ¶¶ 18(a-g).) The goals of this litigation have been met. (Tsarukyan Decl., ¶ 18, and subparagraphs.)

Considering the statutory framework and risks, this result here is fully supportable as reasonable. (Tsarukyan Decl., ¶ 19.) Certification rates are lower than conventional wisdom holds. *See*, *e.g.*, H. Scott Leviant, *Second Interim Report on class actions in California sheds new light on certification* (February 19, 2010), www.thecomplexlitigator.com, available at http://www.thecomplexlitigator.com/post-data/2010/2/19/second-interim-report-on-class-actions-in-california-sheds-n.html; *see also*, *Class Certification in California,* February 2010, available at http://www.courts.ca.gov/documents/classaction-certification.pdf (finding, at page 5, and in Table 9, at page 15, that only 27% of all class actions were certified either as part of a settlement *or* as part of a contested certification motion)).  In estimating risk adjustments here, Plaintiff's counsel has assumed estimated certification probabilities of 20% - 30%, depending on the claim, assumptions that approximate the average rate at which cases were certified in California over the study years, based upon data available through the California Courts website. (*Id*.)  Given that well under 20% of all cases filed in California as proposed class actions are ultimately certified by way of a contested motion, and a similar trend is seen in federal courts, it is fair to say that, if anything, the use of high estimates for certification *overstates* the realistic

---

[5] In a sense, it is nonsensical to assign specific percentages to future events, but it does provide a specific method for attempting to reduce the concept of "very high risk" or "high risk" to a quantifiable amount.  Certification of a claim is typically a binary event.  One does not obtain a 20% certification; a claim is either certified or it is not.  But the current expected value is best quantified by applying a risk reduction, based on the total experience of counsel.

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

current claim value. (*Id.*) It would also be appropriate to evaluate the result by examining only the premium wages at issue, excluding penalties and interest.[6] Under that metric, the settlement recovered a substantial portion of those premium wages. Viewed either way, this Settlement achieves the goals of the litigation.

By obtaining reasonable value for the claims in light of the high risks of litigation, Plaintiff achieved a fair settlement that merits approval.

## 2.    The PAGA Allocation

Plaintiff's estimate of the theoretical recovery on the PAGA claim is $3,236,500. (Tsarukyan Decl. ¶ 18(f)(4).) This estimate does not limit the penalty to the assumption that the $100 initial violation pay period would apply to all pay periods as there is no evidence that a court or a commissioner had informed Defendants that their conduct violated the Labor Code. *Amaral v. Cintas Corp.*, 163 Cal. App. 4th 1157, 1209 (2008); *Willis v. Xerox Bus. Servs.*, LLC, 2013 WL 6053831, *7-8 (E.D. Cal. 2013): "Under California law, courts have held that employers are not subject to heightened penalties for subsequent violations until and unless a court or commissioner notified the employer that it is in violation of the Labor Code." Instead, the maximum possible penalty was calculated, based on data and, where no data exists, the extrapolations and assumptions used to evaluate all claims.

Admittedly, the PAGA allocation is a small percentage of the possible exposure. However, Plaintiff submits that is permissible in this case because the settlement of the underlying wage and hour claims is adequate to serve the deterrent purpose of the PAGA statute. *O'Connor v. Uber Technologies, Inc.*, 201 F.Supp.3d 1110, 1135 (N.D. Cal. 2016): "By providing fair compensation to the class members as employees and substantial

---

[6] The exclusion of interest and penalties from the fairness evaluation is proper because, first, PAGA penalties are discretionary (*see* Lab. Code § 2699(e)(2) (the court in its discretion "may award a lesser amount than the maximum civil penalty amount specified by this part…")), and, second, courts evaluate the strength of a proposed settlement without taking potential penalties or interest into consideration. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 955 (9th Cir. 2000); *see also Miller v. CEVA Logistics U.S.A., Inc.*, 2015 WL 729638, at *7 (E.D. Cal. Feb. 19, 2015) (court utilized calculation of a defendant's exposure exclusive of interest and penalties to determine whether the settlement fell within the range of possible approval).

monetary relief, a settlement not only vindicates the rights of class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." *See also Viceral v. Mistras Group*, 2016 WL 5907869 *9 (N.D. Cal. 2016): "Applying O'Connor's sliding scale approach, settlement of the PAGA claim may be substantially reduced below its standalone settlement value without sacrificing its statutory purposes because the non PAGA settlement is relatively substantial."

Courts have routinely approved similar PAGA allocations. *Penaloza v. PPG Industries Inc*., Case No. BC471369, 2013 WL 2917624 at *2 (Super. Ct. L.A. County, May 20, 2013) (approving PAGA penalties averaging **$7.49 per aggrieved employee** ($5,000 / 667 aggrieved employees)); *Cabrera v. Advantage Sale & Marketing, LLC*, Case No. BC485259, 2013 WL 1182822 (Super. Ct. L.A. County, March 12, 2013) (approving PAGA penalties averaging **$3.33 per aggrieved employee** ($10,000 / 3,000 aggrieved employees). In turn, courts have approved PAGA settlements of **$0**. *See, e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 589 (2010) ("find[ing] no abuse of discretion in the trial court's approval of the settlement agreement containing" $0 for the PAGA claim).

Such discounts are particularly appropriate in PAGA actions, in which Courts exercise significant discretion in the amount of penalties to award. *See Carrington v. Starbucks Corp.,* 30 Cal. App. 5th 504, 529 (2018) (awarding 0.2% of maximum PAGA penalties); *see also Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien*, 2011 WL 7563047, at *4 (C.D. Cal. 2011). During the penalty phase in *Carrington*, the plaintiff requested PAGA penalties of approximately $70 million, but was awarded only $150,000—**or 0.21% of the maximum**—and the court found this warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. This was affirmed

1    on appeal. *Id.* at 529.

2        The amount allocated in to PAGA penalties in this case is more than the
3    amount allocated to the PAGA penalties in other judicially-approved settlements of
4    PAGA claims in hybrid actions. *See Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-
5    KJM-AC (E.D. Cal. June 29, 2016), 2016 WL 3549473 at *3 ($1.95 million
6    settlement allocating $10,000 to PAGA penalties); *Garcia v. Gordon Trucking, Inc.*,
7    No. 1:10–CV–0324 AWI SKO (E.D. Cal. Oct. 31, 2012), 2012 WL 5364575 at *7
8    ($3.9 million settlement allocating $10,000 to PAGA penalties); *Chu v. Wells Fargo
9    Invst., LLC*, No. C 05–4526 MHP (N.D. Cal Feb. 16, 2011), 2011 WL 672645 at *1
10   ($6.9 million settlement allocating $10,000 to PAGA penalties); *Guerrero v. R.R.
11   Donnelley & Sons Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July
12   16, 2013; Judge Matthew C. Perantoni) ($1.1 million settlement allocating $3,000 to
13   PAGA penalties); *Parra v. Aero Port Services, Inc.*, No. BC483451 (L.A. County
14   Super. Ct. April 20, 2015; Judge Jane Johnson) ($1.4 million settlement allocating
15   $5,000 to PAGA penalties); *Thompson v. Smart & Final, Inc.*, No. BC497198 (L.A.
16   County Super. Ct. Nov. 18, 2014; Judge William F. Highberger) ($3 million
17   settlement allocating $13,333 to PAGA penalties); *Chavez v. Vallarta Food
18   Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge
19   William F. Highberger) ($1.5 million settlement allocating $10,000 to PAGA
20   penalties); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super.
21   Ct. Oct. 3, 2013; Judge Kenneth R. Freeman) ($1.5 million settlement allocating
22   $1,000 to PAGA penalties).

23       This is because trial courts have broad discretion to reduce the amount of PAGA
24   penalties.  As to the standards for reducing PAGA penalties, the statute itself says that such
25   penalties should be reduced where they would be: "unjust, arbitrary and oppressive or
26   confiscatory. "Cal. Lab. Code §2699(e)(2).

27

28

### 3.    The Agreed Upon Fees and Costs Are Reasonable

#### a)    *Plaintiff seeks reasonable fees.*

The compensation sought for Plaintiff's counsel is also fair and reasonable.  The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should begin with a "benchmark" percentage of the total fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such an adjustment of the benchmark.

Here, the Settlement Amount is $750,000.  Plaintiff's counsel has agreed to seek no more than $249,999.99 in fees (as agreed upon by the Parties to the Settlement).  (Tsarukyan Decl., ¶ 11.n.)  Plaintiff's counsel also requests actual costs incurred and paid without reimbursement in the litigation of this Action, not to exceed $10,000.

#### b)    *A lodestar crosscheck will support the requested fee.*

The Ninth Circuit has recognized that the lodestar method "creates incentives for counsel to spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002).  The Ninth Circuit has thus cautioned that, while a lodestar method can be used as a cross check on the reasonableness of fees based on a percentage of recovery method if a district court in its discretion chooses to do so, a lodestar calculation is not required and it did "not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly." *Id*.

The fee requested by Plaintiff's counsel represents the fair market value of their labor, and it *is* fair that every class member who benefits from the opportunity to claim a share of the settlement pay his or her pro rata share of attorney's fees.  The regular contingent fee

contract of Plaintiff's counsel provides for attorney's fees between 40% and 45% of any recovery obtained for the client. It would be unfair to compensate Plaintiff's counsel at any lesser rate than the 33 1/3 % amount requested because the value of their labor is consistent with the requested fee.

Finally, as required by *In re Mercury Interactive*, 816 F.3d 988 (9th Cir. 2010), Plaintiff will file a motion for fees and costs after the Court sets a hearing date for Plaintiff's Motion for Final Approval of Class Action Settlement with sufficient time for the Settlement Class members to comment upon it if desired.

### 6.    The Enhancement Award Is Reasonable

Enhancement awards serve to reward class representatives for the time and effort expended on behalf of the class, and for exposing herself to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 award).

Here, Plaintiff's counsel requests that the Court grant Plaintiff and Eddie Duron an incentive award of $7,500 each. The amount of the enhancement award is reasonable given the risks undertaken by Plaintiff and Eddie Duron. Taking the risk of filing a meritorious lawsuit against an employer deserves reward. Additionally, Plaintiff was actively involved in the litigation and provided Class Counsel with important information necessary to assess the strengths and weaknesses of this Action. Plaintiff worked diligently with counsel to prepare the action and conferred with counsel regarding settlement negotiations.

(Tsarukyan Decl., ¶ 31.)

### 7. The Class Notice

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabo*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

Here, the Parties have agreed to provide notice through first class mail to class members, whose last known addresses are known to Defendant.  The Settlement Administrator will be responsible for taking reasonable steps to trace the mailing address of any class member for whom a Class Notice is returned by the U.S. Postal Service as undeliverable.  These reasonable steps shall include, at a minimum, the tracking of all undelivered mail and performing address searches for all mail returned without a forwarding address.  This method of notice clearly suffices.

Rule 23(c)(2)(B) also sets forth requirements regarding the content of the notice.  The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action;
- the definition of the class certified;
- the class claims, issues, or defenses;
- that class member may enter an appearance with or without counsel;
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

The proposed notice attached as Exhibit A to the Agreement complies fully with Rule 23(c)(2)(B).  (Tsarukyan Decl., Exhibit "A" attached to Exhibit "1".)  Courts routinely

approve class notices even when they provide only general information about a settlement. *See*, *e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" sufficient); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement generally.")   The class notice drafted by the Parties exceed the "general information" threshold, providing more than adequate notice about the Settlement.

## VI.   THE COURT SHOULD SCHEDULE A FAIRNESS HEARING

The last step in the settlement approval process is the fairness hearing, where the Court makes a final determination about the propriety of settlement.  Plaintiff requests that the fairness hearing in this case be scheduled for a date approximately 145 days after issuance of the Court's Order granting preliminary approval of the Settlement.  Under the Settlement, the Settlement Administrator will mail out class notices within 60 days after preliminary approval (addresses will be delivered to the Administrator within 45 days and the Notice will mail within about 15 days), and class members have 45 days after mailing of the notice to submit exclusions or objections and an extended response period is permitted if a new address is located.  Since the final approval hearing must be held at least 28 days after the filing of the final approval motion, Plaintiff proposes that the final approval hearing should be scheduled for December 21, 2020, or the first available hearing date thereafter (allowing Plaintiff's counsel about 14 days to prepare and file the Motion for Final Approval after the notice period ends and assuming seven days between the hearing of this motion and the issuance of an Order granting preliminary approval).

///

///

///

///

///

///

## VII. **CONCLUSION**

For the reasons stated above, this settlement is fair and reasonable, especially given the claims and the potential defenses to them and to class certification.  Plaintiff respectfully asks the Court to grant preliminary approval of the settlement and adopt the proposed order submitted herewith.

Respectfully submitted,

Dated:  May 6, 2020                    **REMEDY LAW GROUP LLP**

By: /s/ Andranik Tsarukyan
Andranik Tsarukyan
Armen Zenjiryan

Attorneys for Plaintiff
SILVIA VALDIVIA DE CABRERA

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**